IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BLACKBIRD TECH d/b/a<br>BLACKBIRD TECHNOLOGIES,<br><br>           Plaintiff,<br><br>           v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>           Defendant. | C.A. No. 19-561 (MN) |
| BLACKBIRD TECH d/b/a<br>BLACKBIRD TECHNOLOGIES,<br><br>           Plaintiff,<br><br>           v.<br><br>LYFT, INC.,<br><br>           Defendant. | C.A. No. 19-566 (MN) |

## **MEMORANDUM ORDER**

At Wilmington this 6th day of January 2020:

As announced at the hearing on December 20, 2019, IT IS HEREBY ORDERED that:

1. Uber Technologies, Inc.'s ("Uber") Motion to Dismiss for Failure to State a Claim (D.I. 11 in C.A. No. 19-561) is DENIED.

2. Lyft, Inc.'s ("Lyft") Motion to Dismiss for Failure to State a Claim (D.I. 10 in C.A. No. 19-566) is DENIED.

Defendants moved to dismiss the operative complaints in each of their actions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that the claims of U.S. Patent No. 6,754,580 ("the '580 Patent") are invalid as claiming ineligible subject matter under 35 U.S.C. § 101 and also invalid as indefinite under 35 U.S.C. § 112. In their motions, Defendants also seek

dismissal of Plaintiff's allegations of direct infringement under Rule 12(b)(6) as insufficiently pleaded under the standards of *Iqbal* and *Twombly*. Defendants' motions were fully briefed as of September 9, 2019,[1] and the Court received further submissions in both cases regarding which Supreme Court or Federal Circuit case each party contends is analogous to the claims at issue in Defendants' motions as related to the § 101 arguments. (*See* D.I. 22, 23, 24 in C.A. No. 19-561; D.I. 17, 19, 20 in C.A. No. 19-566). The Court carefully reviewed all submissions in connection with Defendants' motions, heard oral argument[2] and applied the following legal standard in reaching its decision:

**I.     LEGAL STANDARDS**

    A.     Motion to Dismiss for Failure to State a Claim

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232-33 (3d Cir. 2008). "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) (quoting *Anderson v. Kimberly-Clark Corp.*, 570 F. App'x 927, 931 (Fed. Cir. 2014)). Dismissal under Rule 12(b)(6) is only appropriate if a complaint does not contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "[P]atent eligibility can

---

[1]     (*See* D.I. 12, 19, 20 in C.A. No. 19-561; *see also* D.I. 11, 14, 15 in C.A. No. 19-566).

[2]     (*See* D.I. 26 in C.A. 19-561; D.I. 22 in C.A. No. 19-566).

2

be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018).

      B.      <u>Patent-Eligible Subject Matter</u>

Section 101 of the Patent Act provides that anyone who "invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" may obtain a patent. 35 U.S.C. § 101. The Supreme Court has long recognized three exceptions to the broad categories of subject matter eligible for patenting under § 101: laws of nature, physical phenomena, and abstract ideas. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). These three exceptions "are 'the basic tools of scientific and technological work' that lie beyond the domain of patent protection." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)); *see also Alice*, 573 U.S. at 216. A claim to any one of these three categories is directed to ineligible subject matter under § 101. "[W]hether a claim recites patent eligible subject matter is a question of law which may contain underlying facts." *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368 (Fed. Cir. 2018).

Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Alice*, 573 U.S. at 217; *see also Mayo*, 566 U.S. at 77-78. First, at step one, the Court determines whether the claims are directed to one of the three patent-ineligible concepts. *Alice*, 573 U.S. at 217. If the claims are not directed to a patent-ineligible concept, "the claims satisfy § 101 and [the Court] need not proceed to the second step." *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, 880 F.3d 1356, 1361 (Fed. Cir. 2018). If, however, the Court finds that the claims

at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an "inventive concept" – *i.e.*, "an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Alice*, 573 U.S. at 217-18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72-73).

1. Step One of the *Alice* Framework

At step one of *Alice*, "the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015); *see also Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1257 (Fed. Cir. 2016) (step one looks at the "focus of the claimed advance over the prior art" to determine if the claim's "character as a whole" is to ineligible subject matter). In addressing step one of *Alice*, the Court should be careful not to oversimplify the claims or the claimed invention because, at some level, all inventions are based upon or touch on abstract ideas, natural phenomena, or laws of nature. *Alice*, 573 U.S. at 217; *see also McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016). "At step one, therefore, it is not enough to merely identify a patent-ineligible concept underlying the claim; [courts] must determine whether that patent-ineligible concept is what the claim is 'directed to.'" *Rapid Litig. Mgmt. Ltd. v. CellzDirect, Inc.*, 827 F.3d 1042, 1050 (Fed. Cir. 2016).

2. Step Two of the *Alice* Framework

At step two of *Alice*, in searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something "significantly more." *Alice*, 573 U.S. at 218; *see also McRO*, 837 F.3d at 1312. This second step is satisfied when the claim elements "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Berkheimer*,

4

881 F.3d at 1367 (citation and internal quotation marks omitted); *see also Mayo*, 566 U.S. at 73. "The inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art. . . . [A]n inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016). Whether claim elements or their combination are well-understood, routine, or conventional to a person of ordinary skill in the art is a question of fact. *Berkheimer*, 881 F.3d at 1368.

At both steps of the *Alice* framework, courts often find it useful "to compare the claims at issue with claims that have been considered in the now considerably large body of decisions applying § 101." *TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *5 (D. Del. Sept. 28, 2018) (citing *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016)); *see also Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

### C. Pleading Direct Infringement

Liability for direct infringement arises under 35 U.S.C. § 271(a) when a party, without authorization, "makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent." The activities set forth in § 271(a) do not result in direct infringement unless the accused product embodies the complete patented invention. *See Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 & n.2 (Fed. Cir. 2000). Therefore, to state a claim of direct infringement sufficient to withstand a motion to dismiss, a plaintiff must plead facts that plausibly suggest that the accused product meets each limitation of the asserted claim(s). *See TMI Sols. LLC v. Bath & Body Works Direct, Inc.*, C.A. No. 17-965-LPS-CJB, 2018 WL 4660370, at *9 (D. Del. Sept. 28, 2018).

5

The Federal Circuit has provided guidance on pleading direct infringement under *Iqbal / Twombly*. *See generally Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256 (Fed. Cir. 2018). In *Disc Disease*, the Federal Circuit reversed the district court's dismissal of plaintiff's direct infringement claims, finding that the plaintiff's allegations were sufficient under the plausibility standard of *Iqbal* and *Twombly* because the complaint specifically identified the three accused products and alleged that the accused products met "each and every element of at least one claim" of the asserted patents, either literally or equivalently. *Disc Disease*, 888 F.3d at 1260. Following *Disc Disease*, another court in this District similarly found that a plaintiff plausibly pleaded an infringement claim where the complaint specifically identified the infringing product and alleged "that it practices each limitation of at least one claim in" the relevant patents. *Promos Tech., Inc. v. Samsung Elec. Co.*, No. 18-307-RGA, 2018 WL 5630585, at *4 (D. Del. Oct. 31, 2018); *see also AgroFresh Inc. v. Hazel Techs., Inc.*, No. 18-1486-MN, 2019 WL 1859296, at *2 (D. Del. Apr. 25, 2019) (applying *Disc Disease* to find allegations of direct infringement sufficiently pleaded); *DoDots Licensing Sols. LLC v. Lenovo Holding Co.*, No. 18-98-MN, 2018 WL 6629709, at *2 (D. Del. Dec. 19, 2018) (same).[3]

D. <u>Indefiniteness</u>

Section 112 of the Patent Act requires a patent applicant to "particularly point out and distinctly claim the subject matter" regarded as the applicant's invention. 35 U.S.C. § 112 ¶ 2. "The primary purpose of the definiteness requirement is to ensure that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, *e.g.* competitors of the patent owner, can

---

[3] The legal standard for direct infringement set forth in this Memorandum Order is derived from the Court's opinions in *DoDots* and *AgroFresh*.

determine whether or not they infringe." *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779-80 (Fed. Cir. 2002) (citing *Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 520 U.S. 17, 28-29 (1997)). Put another way, "[a] patent holder should know what he owns, and the public should know what he does not." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 731 (2002).

A patent claim is indefinite if, "viewed in light of the specification and prosecution history, [it fails to] inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014). Definiteness is a question of law, but the Court must sometimes render factual findings based on extrinsic evidence to resolve the ultimate issue of definiteness. *See, e.g.*, *Sonix Tech. Co. v. Publications Int'l, Ltd.*, 844 F.3d 1370, 1376 (Fed. Cir. 2017). "Any fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003); *see also Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008).

## II. THE COURT'S RULING

The ruling to deny Defendants' motions to dismiss[4] under Federal Rule of Civil Procedure 12(b)(6) was announced from the bench at the conclusion of the hearing as follows:

> . . . Thank you for the arguments that we had here today. I am prepared to rule on the pending motions. I will not be issuing written opinions, but I will issue an order stating my rulings. I want to emphasize before I get to the rulings that while I am not issuing a written opinion, we have followed a full and thorough process before making the decisions I am about to state. There was full briefing on each of the pending motions, there were additional submissions regarding what each party viewed as the most analogous case and there has been oral argument here today. All of the submissions and the arguments have been carefully considered.

---

[4] (D.I. 11 in C.A. No. 19-561; D.I. 10 in C.A. No. 19-566).

Now as to my rulings. I am not going to read into the record my understanding of Section 101 law. I have a legal standard that I have included in earlier opinions, including in *Kroy IP Holdings v. Groupon*, C.A. No. 17-1405-MN. I incorporate that law and adopt it into my ruling today. I will also set it out in the order that I issue.

\* \* \*

Moving to the *Blackbird* cases. Here, there is one patent at issue – U.S. Patent Number 6,754,580. The patent generally relates to systems for controlling vehicle movements that have vehicles logged in and [that] provide information and updates to a traffic information center and overall traffic control is achieved. The Defendants have moved to dismiss on multiple grounds – that the asserted claims are directed to patent ineligible subject matter under section 101, indefiniteness and failure to state a claim for direct infringement.

After reviewing the entire record, hearing argument, and applying the law as I understand it, I am . . . going to deny the Defendants' motions in their entireties.

First, as to the section 101 motion, both Uber and Lyft treat claim 1 as representative, and Blackbird does not challenge that claim 1 is representative.

> [Claim 1 of the '580 Patent recites:
>
> 1. System for controlling vehicle movements, in areas containing a road network, and a plurality of vehicles that exhibit means for identification, means for road information and means for transmission of information between the vehicle and a traffic information center, characterized in that:
>
>> the road network is so arranged as to be entered into the system as a data network,
>>
>> each vehicle that is intended to make use of the road network is logged in for travelling on the road network,
>>
>> the each vehicle is identified with an identity at the time of logging in, in conjunction with which the identity is either dynamic or static,
>>
>> information relating to the intended destination is sent in from each vehicle to the traffic information center in conjunction with logging

> > in or later in the course of a journey when there is a new desired destination,
>
> > information about position and speed of the each vehicle is reported at regular intervals to the aforementioned traffic information center,
>
> > whereby overall control of the traffic is achieved on the basis of the information reported to the traffic information center,
>
> > information about a proposed route for each vehicle is transmitted from the traffic information center to the each vehicle and
>
> > the system exhibits an exact image of the actual traffic situation and guides the traffic dynamically, for control of the traffic situation centrally.]

> Uber asserts that the abstract idea is "controlling traffic using vehicular information."[5] And Lyft similarly asserts that it is "traffic management."[6] Both Defendants argue that the claims are directed to the mere collection, analysis and display of data, which the Federal Circuit has repeatedly found to be an abstract idea.

> Blackbird, on the other hand, argues that claim 1 is not directed to an abstract idea but instead to an improvement in the functioning of vehicle guidance and control systems. Blackbird argues that it is an improvement over prior art traffic control and route monitoring that determined optimal routes based only on current traffic flow where dynamic guidance was available only in limited circumstances. Blackbird says that the claims claim a "specific solution to the problem of optimizing traffic conditions."[7] That, however, does not seem like a problem in the way the technology operates.

> Unlike the *Enfish* line of cases, claim 1 viewed as a whole does not appear to be directed to an improvement in the capability or functioning of technology for traffic management. Instead, the focus of the claim seems to be on using generic technology to

---

[5] (D.I. 12 at 12 in C.A. No. 19-561).

[6] (D.I. 11 at 4 in C.A. No. 19-566; *see also id.* (adding further detail to traffic management as "identifying vehicles, including with destination, speed, and position, and proposing routes for vehicles based on the routes for other vehicles")).

[7] (D.I. 19 at 11-12 in C.A. No. 19-561).

9

implement the abstract idea of traffic management. Whether the claim falls into the category of collecting and analyzing data, as Defendants suggest, or a way of organizing human activity is not entirely clear to me. But I need not resolve that question to reach a conclusion in step one. It is sufficient to say that the focus of the claim as a whole is collecting and analyzing information relating to traffic to achieve traffic management. That is an abstract idea.

I note here that I am mindful of the *BASCOM* opinion, where the Federal Circuit noted that there are some instances like *Enfish* where individual claim limitations should be incorporated into the articulation of what a claim is directed to, an exercise that happens at step one. Here, there appear to be some limitations that Blackbird believes are relevant at step one – for example, vehicles being logged into a network, guiding the traffic dynamically, overall traffic control is achieved, et cetera. Yet, as was the case in *BASCOM*, this Court believes the effect of those limitations should be considered at step two. In *BASCOM*, the Federal Circuit stated: "We recognize that this court sometimes incorporates claim limitations into its articulation of the idea to which a claim is directed. This case, unlike *Enfish*, presents a 'close call about how to characterize what the claims are directed to.' The *Enfish* claims, understood in light of their specific limitations, were unambiguously directed to an improvement in computer capabilities. . . . [I]n contrast, [in *BASCOM*] the claims and their specific limitations do not readily lend themselves to a step one finding that they are directed to a nonabstract idea. We therefore defer our consideration of the specific claim limitations' narrowing effect for step two."[8] I will do the same in the *Blackbird* cases before me.

As I noted earlier, there is no dispute that claim 1 is representative of the claims at issue. I have also reviewed the claims and find that the claims are substantially similar and linked to the same abstract idea. Thus, when viewing the claims as a whole and looking to their purported improvement over the prior art, I find these claims to be directed to the abstract idea of managing traffic.

Moving to step two of the analysis, Defendants argue that the claims merely recite well-known generic computer components performing conventional computer functions like storing, indexing, receiving access requests, et cetera and this is insufficient to confer an inventive concept.[9]

---

8     *BASCOM*, 827 F.3d at 1349 (citations omitted).

9     (*See* D.I. 12 at 15 in C.A. No. 19-561; *see also* D.I. 11 at 9-10 in C.A. No. 19-566).

Uber asserts that the '580 Patent makes clear that the technical components recited in the claims are conventional and well-known. It also notes that the '580 Patent says "nothing" about the claimed invention being unconventional.[10]

Lyft references the recitation of "means for" limitations in the preamble and argues that the patent repeatedly describes these generic means without any detail, thereby suggesting there is nothing inventive about these limitations.[11]

Blackbird points to its complaints and argues that there are a number of statements that demonstrate the claims contain the requisite inventive concept – in particular, Blackbird alleges in the complaints that the invention claimed in the '580 Patent improved the functioning of conventional traffic control and guidance systems in an unconventional way and, further, Blackbird argues that there are cited portions of the specification that support these allegations.[12]

Blackbird also argues that the ordered combination of elements was not conventional – i.e., vehicles logging in, each vehicle identifying its destination and providing regular updates regarding its speed and position, et cetera.[13]

Here, I disagree with Defendants that the '580 Patent admits that the claim elements and their ordered combination were conventional, well-known and understood in the art. It does not.

Moreover, Blackbird's complaints include plausible factual allegations that the claimed invention improves upon the prior conventional systems by using dynamic route guidance, which allows control centers to better manage the flow of vehicles as compared to only using the current traffic.[14] Under *Berkheimer*, whether the claim elements and their ordered combination is simply well-known, routine and conventional is a question of fact and, in this case, this dispute precludes dismissal.

---

[10] (*See* D.I. 12 at 17 in C.A. No. 19-561).

[11] (See D.I. 11 at 10 in C.A. No. 19-566).

[12] (*See* D.I. 19 at 16-17 in C.A. No. 19-561; *see also* D.I. 14 at 12-13 in C.A. No. 19-566).

[13] (*See* D.I. 19 at 18 in C.A. No. 19-561; *see also* D.I. 14 at 14 in C.A. No. 19-566).

[14] (*See* D.I. 1 ¶¶ 8-10 in C.A. No. 19-561 (Complaint against Uber); *see also* D.I. 1 ¶¶ 8-10 in C.A. No. 19-566 (Complaint against Lyft)).

Although not addressed in detail today, in the papers, Defendants argued that Blackbird's pleading must point to portions of the specification that support its contention that certain limitations are not well-understood, routine or conventional. I disagree. At the motion to dismiss stage, *Aatrix* requires the Court to resolve any plausibly alleged factual issues in favor of the patentee at step two. This means that if Blackbird includes in its complaint plausible factual allegations that support the conclusion that the claim elements or their ordered combination were not well-understood, routine or conventional and there is nothing in the record that the Court can properly consider on a motion to dismiss that contradicts those allegations, then those factual issues must be decided in favor of Blackbird.[15]

While not argued by the parties in the briefs, Plaintiff raised claim construction issues here today. That [claim construction] wasn't raised until today suggests to me that Plaintiff didn't actually think that there was a claim construction issue that had to be addressed before resolving the 101 motion. That being said, I have looked at the claim and I think claim construction may be necessary to reach a conclusion as to whether this is directed to patent ineligible subject matter here. For example, the preamble recites several "means for" limitations that seem to go to the type of technology that is used to effectuate the traffic control achieved by the claims. These terms – if simply generic limitations – may support a finding that there is no inventive concept captured in the claims. That is, if the preamble is limiting and the constructions of these terms result in claim elements or ordered combinations that are simply well-understood, routine and conventional, that certainly has bearing on the Court's step-two analysis. There are other claim limitations that would seem to impact the Court's analysis at step two – for example, dynamic guiding, which is a concept that Blackbird called out in its complaints. It may be that such a concept was well-known and conventional, but that conclusion seems to require claim construction in this case (in addition to factual development). At this stage and on the limited record presently available and properly considered on a motion to dismiss, important issues of claim construction cannot be resolved in order for the Court to reach a finding at step two.

Finally, on the 101 motion, I want to address the most analogous cases cited by the parties.

---

15     *See Aatrix*, 882 F.3d at 1127-28.

Blackbird cites *SRI International v. Cisco Systems*, 930 F.3d 1295 (Fed. Cir. 2019), which involved claims directed to computer-automated methods of monitoring a network where network monitors search for suspicious activity based on analyzing specified network traffic data. And Blackbird also cites to *Vehicle IP, LLC v. AT&T Mobility, LLC*, No. 09-1007-LPS, 2016 WL 5662004 (D. Del. Sept. 29, 2016). As I said before, when I ask for cases, I want the single most analogous Supreme Court or Federal Circuit case. I am not asking for a supplementation of the briefing with cases and argument.

Addressing the *SRI* case, in *SRI International*, the Federal Circuit found that the claims were directed to using a specific technique – i.e., network monitors that analyze specific types of data and integrating reports from the monitors – to improve a technological problem in the realm of computer networks. The specification explained that conventional networks are vulnerable to attack based on their interoperability and seemingly localized attacks can quickly spread and disable global networks, but the claimed invention provided a method of recognizing threats in these networks. Computers were not being used merely as a tool, but rather the claims focused on improving the technical functioning of the computers to achieve better network security and did so in a way that prevented the normal operation of the computer network. Thus, at step 1, the focus of the claim was on an improvement in computer network technology and not merely the abstract idea of analyzing data from multiple sources.

The claims in *SRI* seem different because, in that case, there was a problem in the prior art networks in terms of how the networks themselves functioned with localized security attacks and the claimed invention was directed to solving that technological problem by deploying network monitors – here, the problem in the prior art seems to be more about a way of controlling traffic and the claimed invention attempts to solve that problem using generic technology.

Defendants jointly cite *Electric Power Group v. Alstom S.A.*, 830 F.3d 1350 (Fed. Cir. 2016), which involved claims directed to methods for detecting events on power grids in real time by receiving and analyzing data from various sources and detecting/analyzing events based on certain measurements and displaying the event analysis and diagnosis.

The Federal Circuit found that the claims were directed to an abstract idea because they were simply methods of collecting

13

information, analyzing it and then displaying results based on that collection and analysis where the claims' focus was not on any improvement in computers as tools and, further, that there was no inventive concept recited in the claims despite being limited to the technological environment of power-grid monitoring – just conventional computer and network components being used in conventional ways to collect, analyze and display data.

I agree that, at step one, the claims at issue here are similar to the claims at issue in *Electric Power* insofar as they are largely focused on the collection, analysis and display of data. That is, the claims of the '580 Patent are not directed to any particular improvement in the way route guidance technology functions. Rather, the focus of the claimed invention here is on collecting, analyzing and displaying data relating to vehicles traveling on a road network. But this case differs from *Electric Power* at step two because, at this stage, the Court cannot conclude that the claims require only "off-the-shelf, conventional" technology functioning in conventional ways to gather, analyze and present the data. Indeed, in light of the subsequent decisions after *Electric Power* in *Berkheimer* and *Aatrix*, the Court must conclude under the facts of this case that Defendants have failed to meet their burden at step two.

Moving to indefiniteness, the Defendants assert that the claims should be found indefinite at the motion to dismiss stage for two reasons. First, because they "recit[e] both an apparatus and a method of using that apparatus renders a claim indefinite under section 112, paragraph 2" citing *Rembrandt Data Techs., LP v. AOL, LLC*, 641 F.3d 1331, 1339 (Fed. Cir. 2011), and *IPXL Holdings, LLC v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005). And second, the Defendants argue that the claims are indefinite because of the means-plus-function language used.

I am going to deny that motion. Although Defendants cited to me one case in which the district court decided definiteness on the pleadings, that seems to be the exception and not the rule.

The indefiniteness arguments here seem to require claim construction. Indeed, the Federal Circuit has recognized that indefiniteness is "inextricably intertwined with claim construction." *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1379 (Fed. Cir. 1999). I cannot resolve the claim construction issues on the record here and I will deny the motion based on indefiniteness.

Finally, both Uber and Lyft move to dismiss on the basis that the pleading fails to meet the pleading standards of *Iqbal* and *Twombly*. Specifically, Lyft asserts that no plausible allegation is made for two claim elements: 1) "whereby overall control of the traffic is achieved on the basis of the information reported to the traffic information center" and 2) "the system exhibits an exact image of the actual traffic situation and guides the traffic dynamically, for control of the traffic situation centrally."[16] Uber asserts that "Blackbird does not plausibly allege that 'overall control of the traffic is achieved' by Uber or anyone else."[17]

With respect to both the "overall control" term and the "traffic situation" term, there again appears to be a claim construction issue as to what that means. Another court in this district has previously held that "if a court is required to construe the meaning of claim terms and perform an infringement analysis in order to resolve a motion to dismiss, the motion should be denied, because this type of analysis is inappropriate at the pleading stage." And that is *Novartis Pharmaceuticals Corp. v. Actavis, Inc.*, No. 12-366-RGA, 2012 WL 6212619, at *7 (D. Del. Dec. 5, 2012). I will follow suit and deny the motions on these grounds.

/s/ Maryellen Noreika
The Honorable Maryellen Noreika
United States District Judge

---

[16] (D.I. 11 at 17-18 in C.A. No. 19-566).

[17] (D.I. 12 at 18 in C.A. No. 19-561).